Foran, J.
This is an action in which the petitioner, F. W. Caldwell, asks the court to enjoin the city of Cleveland' and R. Y. McCray, as clerk of the council of the city of Cleveland and as the city clerk of the city of Cleveland, for reasons stated in his petition. He says that he is a tax-payer, and that on or about the 3d day of May, 1911, he requested the city solicitor of said city, in writing, to bring this action,' and that said city solicitor failed and . refused to do so. -
• For his cause 'of action plaintiff says that on the 9th day of June,' 1902, the council of the city of Cleveland passed ordinance No. 37,941, an ordinance requiring the preparation of plans, for the abolishment of grade crossings; that by the terms of said ordinance the Lake Shore & Michigan Southern Railway Company, operating a steam railroad passing through the city of Cleveland, was required, within six months after the passage of the ordinance, in co-operation with the engineer of said city, to prepare and submit to the council plans and specifications for the abolishment of grade crossings on its road, the ordinance describing such crossings as "all grade crossings on its road within the city limits.”
*485 2. That on June 3, 1910, the council of the city of Cleveland adopted a resolution declaring it necessary to issue bonds of the city of Cleveland for the purpose of defraying the city’s portion of the cost of abolishing railroad grade crossings of streets and highways; that by the terms of said resolution the question of issuing and selling said bonds was submitted to the vote of the qualified electors of the city, at a special election held on the 22d day of July, 1910; that said resolution provided how the question of whether such bonds should be issued be submitted to said qualified electors; that on the 20th day of June, 1910, the council of said city adopted a resolution respecting said special election and the issuing of said bonds, in which resolution it was provided that bonds to the sum of $2,000,000 should be issued to defray, the city’s portion of the cost of abolishing railroad grade crossings of streets and highways; and in this resolution some twelve or fifteen of such crossings are specifically named,, and among the crossings so named are the crossings at Lake avenue and Madison avenue of the Lake Shore & Michigan Southern Railway Company.
That on June 21, 1910, this resolution was published in the Cleveland Leader, a newspaper of general circulation in said city; and that, in addition thereto, banners were placed and strung ,at the various crossings named in said resolution, including the crossings at Lake avenue, N. W., and Madison avenue, N. W., of said Lake Shore & Michigan Southern Railway; that these banners declared, in substance, that if said bond issue carried at said election, the grade crossings over which said banner was strung would be abolished.
3. That on July 22, 1910, the special election provided for in the foregoing resolution was duly and regularly held, two-thirds of the voters of the city of Cleveland voting at said election voting in favor of the issuing of said bonds; that on or about the 6th day of September, 1910, and pursuant to the vote and action of said electors, the council of the city of Cleveland, two-thirds of the members concurring, duly and regularly passed ordinance No. 18,650, providing for an issue of bonds in the sum of $2,000,-000, for the purpose of paying the city’s portion of the cost and expense of abolishing railroad crossings of streets and highways in said city; that it was provided in said last mentioned ordi *486 nance, that it was deemed necessary to issue and sell these bonds, as therein provided, to pay the said city’s portion of the cost of abolishing said railroad grade crossings, in which said ordinance and crossings to be so abolished were specified by name, but the crossings of Lake .avenue, N. W., and Madison avenue, N. W., where the Labe Shore & Michigan Southern Railway crosses said avenues, were not specified nor in any way mentioned or referred to, but that said ordinance provided that the bonds to so be issued should be designated as “grade crossing bonds.”
That prior to April 1, 1911, said bonds were duly advertised and sold according to law, and the proceeds thereof are now in the treasury of the city of Cleveland.
That said bonds provided that the said city of Cleveland’s portion of the cost of abolishing certain railroad grade crossings specified therein, was to be paid out of the proceeds -of the sale of said bonds, but that the crossings at' Lake avenue, N. W., and Madison avenue, N. W., were not specified in any of said bonds, nor were they in any w.ay referred to therein or thereon.
4. Plaintiff further says that the council of the city of Cleveland, on the 10th day of April, 1911, passed ordinance No. 20645a, which ordinance was entitled “An ordinance to supplement ordinance No. 18650,” and was in effect what may be termed a curative ordinance, or an amendment to ordinance No. 18650.
In this curative ordinance it is said that “Whereas, by inadvertence and clerical error, crossings of the tracks of the Lake Shore & Michigan Southern Railway Company at Madison avenue, N. W., and Lake avenue, N. W., were omitted from said ordinance Nó. 18650”; and further, that, “Whereas the members of council voted for and passed said ordinance under the belief that the city’s portion of the cost of changing the grades of the tracks of said railway company and said streets, and separating the same at the crossings last aforesaid, was provided to be paid from the proceeds of the sale of said bonds,” * * * therefore the ordinance provides:
“Be it ordained by the council of the city of Cleveland, state of Ohio, two-thirds of .all the members thereof concurring, that the city’s portion of the cost of separating the grades of the railroad tracks of the Lake Shore & Michigan Southern Railway Company * * * at Madison avenue, N. W., and Lake *487 avenue, N. W., and changing the grades of said streets and tracks by raising and lowering or relocating the same, shall be paid for from the fund created by the sale of bonds issued under authority of ordinance No. 18650, passed by this council September 6, 1910; and that said funds shall be held subject to and as appropriated for the payment of the city’s portion of the cost of separating and changing the grade of said railroad tracks and said streets, as aforesaid.”
In other words, this supplementary ordinance No. 20645» in effect shows an attempt to cure the defect or' inadvertence in ordinance No. 18650 by providing that the funds created from the sale of said bonds might be used for the relocation or the changing of the grades of the streets at Madison avenue, N. W., and Lake avenue, N. W., by either raising, lowering or so relocating the same as to minimize the danger to. the public in crossing the Lake Shore. Railroad at these' points, either above or below grade. • ■ '
5. That on or about the 1st day of May, 1911, the council of the city of Cleveland passed a resolution declaring the necessity, and the intention of the city, to alter and abolish the crossings of the Lake Shore & Michigan Southern Railway Company at Lake avenue, N. W., and Madison avenue, N. W., and to lower the grades of said avenues below the tracks of said railway company, and to require the Lake Shore & Michigan Southern Railway Company to construct ways or crossings that are to be passed under its tracks, and to require said railway company to erect permanent piers or abutments or other .appropriate supports in said streets and avenues, and specify the terms and conditions under which said improvements shall be made in accordance with the laws provided therefor.
And the plaintiff says that the defendant, R. Y. McCray, as clerk of the city of Cleveland and as clerk of the council of the city of Cleveland, .is about to publish said last mentioned resolution in accordance with the law, and is about to proceed to serve notice upon the owners of abutting property, .as provided for in said resolution.
Plaintiff further says that the action and proceedings of the council of said city,, as hereinbefore' set forth, are contrary to law, and will result in a misapplication of the funds of said *488 city of Cleveland, .and are and will be an abuse of its corporate power, and are in preparation for the execution and performance by said city of Cleveland of a contract in contravention of the laws governing said city in three respects, to-wit:
(a) That the city is attempting to use the funds of said corporation derived from the proceeds of said bonds sold under authority of ordinance No. 18650, for the purposes and improvements set forth in the resolution of said city passed on the 1st day of May, 1911; .and that such use of said funds is illegal in that the crossings of Lake avenue, N. W., and Madison avenue, N. W., were not specified in said ordinance No. 18650, nor in said bonds; and that said ordinance No. 20645a is ineffective to supplement or to remedy omissions in ordinance No. 18650.
(b) That the crossing of Lake .avenue, N. W., and the railroad of the Lake Shore &, Michigan Southern Railway Company is not a crossing at grade, and therefore is not within the meaning and terms of the act of May 2, 1902, found in 95 O. L., 356-359, and all amendments thereof and supplementary thereto, because the tracks of the Lake Shore & Michigan Southern Railway Company at said Lake avenue, N. W., cross said avenue overhead upon a stone tunnel bridge containing two passages; and further, that the plans and specifications agreed upon by the city engineer of the city of Cleveland and the Lake Shore & Michigan Southern Railway Company being for the purpose of substituting for said stone tunnel bridge a new steel and concrete bridge with pillars and piers upon the curb of said street and affording a wider roadway for travel and greater clearance, and the grade of said Lake avenue, N. W., under said plans, is to be lowered.
(c) That the resolution of the council of the city of Cleveland of May 1, 1911, above set forth, is illegal because the plans and specifications therein approved were not prepared and submitted to said council of the city of Cleveland or any engineer designated by ordinance of said council within six months, and a longer time was not mutually agreed upon, and said the Lake Shore & Michigan Southern Railway Company failed to so cooperate in the preparation of said plans and specifications, and did not furnish any such until they furnished the plans and specification's referred to and approved in said resolution of *489 May 1, 1911; and that said plans and specifications so furnished were submitted without request therefor from said council of said city.
6. Wherefore the plaintiff prays the court to restrain and enjoin the defendant, R. Y. McCray, as clerk of the council of said city of Cleveland and as clerk of the city of Cleveland, from publishing the said resolution of .May 1, 1911, and the defend-’ ant, the city of Cleveland, from using or attempting to use the proceeds of the bonds of said city sold under authority of ordinance No. 18650 for the purposes and improvements set forth in the resolution of said city council of May 1, 1911, and especially from using the proceeds of said bonds for the changes and alterations at Lake avenue, N. W., provided for in said resolution.
Plaintiff also prays that the city be restrained from executing or entering upon the performance of any contract or contracts provided for or incidental to the improvements specified in said resolution of May 1, 1911, and for such other relief to which he may in equity be entitled.
It will be seen from this statement of the case that three questions are presented:
First, can the city of Cleveland use the money created by the sale of these bonds for the purpose of altering and abolishing the crossings at Lake avenue and Madison avenue?
Second, it being admitted that tracks of the Lake Shore Railroad now pass over Lake avenue on a tunnel bridge,, beneath which said Lake avenue traffic is carried on, can this crossing be altered and changed as provided for in the resolution of May 1, 1911, under the provisions of the General Code, Section 8874 et seqJ
Third, it being admitted that the plans for these improvements not having been prepared and agreed upon within the six months period provided by the ordinance of June 9, 1902, can the same be legally followed and adopted by the prosecution of these improvements?
As to the first question presented, it may be sufficient to say, that it is admitted in the petition of the plaintiff that all proceedings taken with respect to the altering or abolishing or eliminating of railroad crossings, with Lake avenue and Madison avenue *490 included, were regular, with the exception that ordinance No. 18650, above referred to, does not specify by name that the crossings at Lake avenue and Madison avenue shall be eliminated or abolished, altered or improved; and that the bonds which were issued to provide money for. the elimination and abolishing of railroad grade crossings do not state upon their face that any of the proceeds of said bonds shall be used for the elimination, alteration or abolition of the Madison avenue or Lake avenue crossings.
It will not be denied that the money raised by the issue of bonds provided for in ordinance No. 18650 was legally raised, and that the bonds themselves were legal; but the contention is, that no portion of the fund thus raised by the sale of these bonds can be used for the elimination, alteration, abolition or improvement of the crossings at Lake avenue or Madison avenue.
In the case of The United States Trust Company v. The Village of Mineral Ridge, 44 C. C. A., 218 (104 Fed., 851), the question here raised was directly presented. It appears that refunding bonds were issued by the village of Mineral Ridge, purporting to have been issued by authority of Section 2701, Revised Statutes of Ohio, and containing a recital that they were issued to take up prior bonds, etc., “as provided in the ordinance of said village.” It was held that such reference to the ordinance was not a compliance with the requirements of Section 2703 of the Revised Statutes of Ohio (1536-284), which provides that all bonds issued under the prpvisions of .the chapter “shall express upon their face the purpose for which they were issued, and under what ordinance ’ ’; and inasmuch as the bonds provided that they were issued ‘ ‘ as provided in the ordinance of said village, ’ ’• the specific ordinance not being named, it was held that such a reference to the ordinance was not a compliance with the section of the statute herein quoted.
In view of this decision, it may be said that, inasmuch as ordinance No. 18650 failed to specifically name therein Madison avenue and Lake avenue, and that the bonds provided for by the ordinance also failed to name these crossings, such ordinance or such bonds — or, rather, the proceeds derived therefrom — may not be used to eliminate, alter, change or improve the crossings at Lake avenue or Madison avenue. But it will be noticed that *491 the petition itself alleges that a curative ordinance was passed on the 10th day of April, 1911, and is known as ordinance No. 20645a, which was an ordinance to supplement ordinance No. 18650, and was amendatory thereof. The petition, however, denies that this amendatory or curative ordinance is effective, and does not in fact cure the defect in the original ordinance No. 18650. We do not think this position well taken. In the elaborate work of John W. Smith on "The Modern Law of Municipal Corporations,” it is held, Vol. 1, p. 514, Section 587 (s), that:
“It sometimes happens that an ordinance is within the scope of power, express or implied, granted to the municipality, but by reason of some informality in the passage, or of some other preliminary step prescribed by the charter not being taken, the validity as a binding contract is open to attack. In such case the ordinance may be rendered valid by a curative ordinance, subject, of course, to intervening rights.”
The petitioner admits that-the bonds issued under and by authority of ordinance No. 18650 are within the scope of power granted to the city of Cleveland by the statutes of the state of Ohio. If this be true — and the petitioner will not be heard to complain, because he admits that it is ’true — then a mere informality in the passage, or the omission of any preliminary step prescribed by law, may be cured or rendered valid by a curative ordinance, subject to any intervening rights. It does not appear from the petition that any rights have intervened since the passage of said ordinance, or that anybody will be affected or any person injured by the use of the funds created by ordinance No. 18650 for the elimination or the' improvement of the crossings at Lake avenue and Madison avenue.
Harris on Municipal Bonds, page 166, says:
“The invalidity arising from irregularities in the proceedings or issuance (of bonds) may often be-cured by subsequent acts of the duly authorized municipal officers, with the express permission or acquiescence of the tax-payers.”
It must be admitted — at least it will not be seriously denied— that the members of the council are duly authorized municipal officers, and have the right to validate or render valid bonds *492 which are attacked for a mere omission or a mere irregularity in failing to state therein the names of two crossings among some twelve or fifteen that are to be eliminated. The money for the elimination or improvement of these crossings is on hand, and is now in the treasury of the city. The tax-payers, by the vote authorizing the issue of said bonds, expressly stipulated that these funds should be used for the elimination of all the grade crossings mentioned in the advertisement published in the Leader, as above stated, among which crossings will be found Lake avenue and Madison avenue.
In Section 421, page 870, of Eeed on Corporate Finance, Vol. 2, the author uses this language:
“The court, in construing the statute of Indiana as to the purchase of a gravel road running through several townships, held that when an election is held in a number of townships, it having been ordered in response to a petition signed by the voters of all the townships, and a majority of the voters is in favor of making the purchase of the gravel road running through the townships, with a view to its becoming a free gravel road, it becomes the duty of the county commissioners of the county in which the townships are situated to make the purchase, and they then are authorized to issue bonds for the purpose, and levy a tax upon the citizen of the townships interested, for their payment.”
And so in this case, the voters of the city of Cleveland, by a majority of two-thirds, as required by law, authorized the issue of bonds for the elimination, improvement or the abolition of the crossings at Lake avenue and Madison avenue, with a view to minimizing the danger to the public at these crossings; and the voters having so authorized the council to issue said bonds and raise said funds, it now becomes the duty of the council of the city of Cleveland to use said funds for the purpose intended by the voters at said election, the voters having been duly notified and fully understanding what said bonds were .to be issued for, and what crossings were to be eliminated or improved by the moneys raised by the issue of said bonds.
The court therefore holds that this contention of the petitioner is not well taken, and that the city may legally and lawfully use the money which was provided for by the issuing and *493 sale of bonds for tbe elimination and the improvement of the crossings at Lake avenue and Madison avenue.
It is admitted that all proceedings for the sale of bonds for the raising of this money were legal and regular. That being so, we know of no means by which the money can be paid back to the tax-payers; and if it can not be used for the purposes indicated in the advertisement preceding the election, it is difficult to understand what can be done with it, or what will become of it. Surely it may be said that the petitioner can not justly find fault with the use of t'he money as proposed by the city.
The next question raised by the petition is, that inasmuch as the tracks of the Labe Shore & Michigan Southern Railway Company now pass over Lake avenue on a tunnel bridge, through which Lake avenue runs, this crossing cam not be altered or changed, as provided for in the resolution of May 1, 1911, under the. provisions of the General Code, Section 8874 et seq.
It is provided in Section 8863 of the General Code, that if the council of a municipal corporation, in which a railroad or railroads and a street or other public highway cross each other at grade or otherwise, and the directors of the railroad company are of the opinion that the security and convenience of the public require alterations in such crossing or the approaches thereto, or that such crossing should be discontinued, with or without a new way or substitution therefor, and if they agree as to the alterations, they may be made as is provided in the following sections.”
It seems to the court that the intention- of the Legislature clearly was, that an alteration of a crossing of the character in question, or of the approaches," if the municipal corporation and the railroad company are of the opinion that the security and convenience of the public require alterations in the crossings or the approaches thereto, may be made as the statutes provide.
Section 8874 of the General Code provides that any municipal corporation may raise or lower, or cause to be raised or lowered, the grade of any street or way above or below railroad tracks, or require the railroad company to construct ways or crossings that are to be passed under its tracks; and the city may *494 require such, railroad company to erect permanent piers, abutments, or other proper supports in the ways and crossings, streets, roads or alleys, whenever in the opinion of the council the same may be necessary.
About forty or fifty years ago the Lake Shore & Michigan Southern Railway Compaq, in extending its system westward from the union depot_in the city of Cleveland,' ran its tracks westward across the Cuyahoga river, practically parallel with the shore of the lake, until it reached a point westward about at the foot of what is now known as "West 85th street, when the road or tracks diverged southward toward Detroit street, Rock-port and Berea. Detroit street is a public thoroughfare running from the Cuyahoga river westward to Rocky river about one-half mile south of the shore of Lake Erie. This street is located upon an elevation or ridge that was perhaps formerly the shore of the lake itself. At all events, at the point where the Lake Shore &' Michigan Southern Railway tracks cross Detroit street the land falls away sharply towards the north; and the railway com-pa^r, in building its tracks from the shore of the lake southward towards Detroit street, did so upon an embankment which gradually rises from the shore of the lake- until Detroit street is reached, this embankment attaining at Lake avenue and points between Lake' avenue and Detroit street a height of between twenty and twenty-five feet. At the time the railway company eonstruetd its line upon this embankment, the western boundaries of the city were a mile or two to the eastward of the embankment. When the city; owing to its increase in population and natural growth, extended its boundaries to this embankment and beyond, it surely had a right to cut streets through this embankment, or lay out- streets running parallel with Detroit street and between Detroit street and the shore of the lake. In other words, the railway company could not, by constructing- and building this embankment, prevent the city from extending its streets westward from its original boundary line through this -embankment; that is, the railway company could not prevent the city from so extending its streets. And it will not be denied that if the railway company, by its •conduct in constructing and building this embankment, prevented the free construction of streets westward from the *495 boundary of the city, it will not now be heard to complain, if it is required by the city, when streets are cut through this embankment, to pay its portion of the necessary expense of extending such streets.
It is true that a grade crossing means a place where a highway or common road crosses a railroad on the same level; but it is a well-known fact that, for purposes of drainage, if not for purposes of grade, a railroad frequently raises its tracks above the surrounding territory several feet; and when the highway or common road approaches this railroad so raised, it must do so at a grade slightly raised from the horizontal. It is true that when it reaches the tracks or road, and the tracks are on a common level, the highway crosses the railroad at a level. A grade means the degree of inclination of a road as compared with horizontal. As has been said, if a railroad, by its own conduct, places an embankment across a stretch of territory which eventually is taken into a city or municipality, the city or municipality can not be prevented from extending its streets through this embankment; and we believe it was the intent of the Legislature; by Sections 8861 and 8874, to provide for just such a contingency. But be that as it may, in the year 1897, and between that year and 1899, the park board of the city of Cleveland, co-operating with the Lake Shore & Michigan Southern Railway Company, extended what is known as the Boulevard northward from Detroit street and through the embankment above specified; and at that time the Lake Shore & Michigan Southern Railway Company, co-operating with the park board, bore its share of the expense of constructing the approaches to this embankment, and in providing piers and abutments to protect the boulevard or highway as it passed through the embankment; and we think that by that conduct the railroad itself has placed a construction upon the laws relating to crossing which is conclusive so far as the issues now involved are concerned. At all events, I can not understand how a private citizen will be heard to complain of a matter of which the railroad itself is not complaining.
The crossing at Lake avenue is unquestionably one of the most dangerous crossing in the city of Cleveland. Lake avenue ap *496 proaeh.es the embankment at an acute angle, and what may be called tubular-arch roadways were constructed under the railway tracks through this embankment. These archways are about twelve or fourteen feet wide. Travel going westward passes by the right or northerly one of these tunnel archways, and travel going eastward passes also by the right but through the southerly archway. Street railway tracks are laid through these tunnel archways, and teams or pedestrians passing through them are in imminent danger of being run down by street cars or automobiles. Teams can not pass each other through either one of these tunnel archways. Teams approaching the embankment and passing by the right go through one of the separate tunnels; but if, through inadvertence or mistake, teams or automobiles should carelessly avoid the law of the road, there would be no way of preventing a very dangerous collision.
So that the alteration and improvement, or what may be termed the abolishment or the elimination, of this crossing is absolutely necessary. The money raised for the purpose of making the improvement ought to be, and in the mind of the court can be, used for that purpose.
There remains only the third question, and that is, where the plans for these improvements were not prepared or agreed upon within six months provided by the ordinance of June 9, 1902, can they be legally followed and adopted by the prosecution of the improvements.
It is undoubedly true that the provisions of the statutes, Sections 8876 and 8877, General Code, requiring the preparation of plans within a limited period after the passage of the ordinance, are clearly directory, and are in no sense mandatory, so far as they concern any one except a railroad company and the municipality as the contracting parties. This provision as to the time of preparing plans is clearly for'the purpose of fixing a reasonable time within which plans shall be prepared; and it is undoubtedly a provision which can be waived by the parties for the purpose of extending the time for preparing the plans, or otherwise. And as this is conceded by the plaintiff, we are at a loss to understand why he should complain. The railway company itself is not complaining in the matter; and *497 indeed the petition admits that the railway company has prepared its plans, and is ready to go forward with the improvements, and has waived the provisions of the sections above referred to requiring the preparation of plans within a limited period of the passage of the ordinance.
For the reasons indicated, the demurrer to the petition will be sustained; to which the plaintiff excepts.